Allied Machine & Engineering Corporation v. Commissioner.
Allied Mach. & Eng'g Corp. v. Commissioner
Docket No. 20128.
United States Tax Court
1950 Tax Ct. Memo LEXIS 146; 9 T.C.M. (CCH) 593; T.C.M. (RIA) 50182; July 17, 1950
*146 Glenn W. Vogelgesang, Esq., for the petitioner. William R. Bagby, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies in income tax and excess profits tax for the fiscal years ended July 31, 1942, July 31, 1943, and July 31, 1945, as follows: Income
Excess
Fiscal year
Tax
Profits Tax
July 31, 1942
$5,170.91
$ 1,434.50
July 31, 1943
8,176.76
July 31, 1945
6,472.72
14,458.33
However, the year 1945, only, is involved in this proceeding. With respect to the year 1945, only part of the tax deficiencies are in dispute. The question to be decided is the amount of a reasonable allowance for salaries and other compensation for services which three officers of petitioner rendered during 1945. The question arises under section 23 (a) (1) (A) of the Internal Revenue Code. The respondent disallowed $4,500 of the amount which petitioner deducted for compensation of each of the three officers involved, or, the aggregate amount of $13,500. The petitioner contends that respondent erred in his determination. The petitioner filed its return with *147 the collector for the eighteenth district of Ohio. Findings of Fact The facts which have been stipulated are found as facts, and the stipulation is incorporated herein by this reference. The petitioner, an Ohio corporation, was organized on July 11, 1941. Since 1944, its principal place of business has been in New Philadelphia, Ohio. Prior to July 11, 1941, a machine shop business was conducted as a proprietorship under the name of Portage Machine Company by Harold E. Stokey, and his father, William H. Stokey, and his brother, Chester H. Stokey. The business of Portage Machine Company was the same as that of petitioner, and Portage was the predecessor of petitioner. The plant of Portage was located at Ravenna, Ohio. At some time in 1941, a Government agency proposed to the Stokeys that they undertake to manufacture bearing lock nuts. The Portage Company was one of three companies in the United States that could make the particular item. It was proposed that the Stokeys move to New Philadelphia and occupy a building owned by Defense Plant Corporation under a lease. The Stokeys agreed to the proposal and moved to New Philadelphia where they set up a new plant. The petitioner was *148 incorporated to conduct the business in New Philadelphia. Some of the machines and equipment which the Stokeys had used in their business at Ravenna were transferred to petitioner in exchange for stock. Other equipment which had been used in the Ravenna plant was sold. The original stock of the petitioner corporation which was issued on August 6, 1941, consisted of 100 shares, of which 72 shares were issued in equal amounts to H. E. Stokey, C. H. Stokey, and W. H. Stokey, who received 24 shares each; 24 shares were issued to L. B. Green, and four shares were issued to R. Wilt, an attorney. On and after April 13, 1942, additional stock was authorized and issued to members of the Stokey family. Also, in 1944, H. E. Stokey and C. H. Stokey acquired the stock of L. B. Green, each one receiving 12 shares. Finally, as of July 31, 1945, the outstanding stock of petitioner consisted of 423 shares of which H. E. Stokey held 151 shares; the wife of H. E. Stokey held 10 shares; C. H. Stokey held 134 shares; W. H. Stokey held 124 shares, and R. Wilt held four shares. The petitioner reports its income and makes its returns under an accrual method of accounting, and on the basis of a fiscal year *149 ending on July 31st of each year. Since the time of the organization of petitioner the officers have been as follows: H. E. Stokey, president and treasurer; C. H. Stokey, vice president; and W. H. Stokey, vice president. Since its incorporation in 1941, petitioner has been engaged in the machine shop business and its principal product has been bearing lock nuts. Petitioner's contracts were obtained through competitive bidding. Petitioner had no direct contracts with the Government. Its contracts were with producers of equipment, machines, and articles on which wheel nuts and nut locks were used. Petitioner produced under contracts for the Chrysler and F. L. Jacobs corporations, and for others. Petitioner also sold to distributors in Cleveland, Detroit, Pittsburgh, and throughout the country. Petitioner produced products in many sizes and designs, although it followed the standards established by the Bearing Engineers' Association. In the manufacture of its products, the petitioner had many problems during the period from 1941 through 1945 in obtaining materials, labor, machines and machine tools. The Government provided some of the machines which were used by petitioner but many *150 of the machines which were supplied were the wrong machines. The Stokeys drew up the designs for the tooling of the machines in its plant and made toolings, jigs, and fixtures which were required to make the particular products for which petitioner had obtained contracts. For the fiscal years ending July 31, 1942, through July 31, 1947, petitioner's gross and net sales were as follows: Year
Gross
Net
1942
$ 160,050.02
$ 156,220.12
1943
291,968.80
283,672.34
1944
547,705.21
515,899.07
1945
1,036,240.46
1,007,280.97
1946
476,191.52
457,973.52
1947
547,249.76
523,024.71
Petitioner's net profit before Federal taxes and before any allowances for bonuses to officers for the period ending July 31, 1942 through July 31, 1945, and before adjustments by representatives of the Bureau of Internal Revenue was as follows: Year
Amount
1942
$ 24,013.79
1943
27,692.56
1944
45,181.34
1945
222,003.32
Petitioner reported net income in its income tax returns for the fiscal years ending July 31, 1942 through July 31, 1945, computed after taking deductions for all compensation of its officers, as follows: Year
Net Income
1942
$ 13,207.58
1943
14,555.89
1944
25,662.41
1945
151,415.49
*151 Petitioner reported in its income tax returns for the fiscal years ending July 31, 1946 and July 31, 1947, net losses in the amounts of $76,719.04 and $36,387.90, respectively. The compensation of the three officers of petitioner has been on the basis of a fixed annual salary and a percentage of net profits before taxes since the organization of petitioner. For the fiscal year ending in 1942 the authorized annual salaries were as follows: H. E. Stokey $5,100; C. H. Stokey $4,300; and W. H. Stokey $3,940; total $13,340. Also, the amount of the authorized bonus for each officer for the fiscal year ending in 1942 was $3,602.07, or a total of $10,806.21. The total authorized salaries and bonus allowances for the three officers were $24,146.21. The foregoing total compensation was paid to the three officers in cash. For the fiscal year ended March 31, 1943, the total authorized compensation of the three officers, consisting of fixed annual salaries and bonus allowances was $34,136.67, of which $11,186.67 was paid in cash and $22,950 was paid by the issuance of stock of petitioner. The authorized fixed salaries, pursuant to resolutions adopted by the board of directors and stockholders *152 of petitioner on March 31, 1942, were as follows: The authorized fixed salary of H. E. Stokey was $9,000; C. H. Stokey $6,600; W. H. Stokey $5,400. The authorized bonus allowance for each officer under the above resolutions was fixed at 15 per cent of net profits before Federal taxes. Accordingly for the fiscal year ending July 31, 1943, the bonus of each officer was $4,378.89, or a total of $13,136.67. The authorized fixed salaries of the three officers for the fiscal year ending July 31, 1944, was the same as in the previous fiscal year. Also, the bonus allowances were at the rate of 15 per cent of net profits and amounted to the following: H. E. Stokey $6,506.31; C. H. Stokey $6,506.31; and W. H. Stokey $6,506.31, or a total of $19,518.93. The total authorized compensation for the three officers consisting of fixed salaries and bonus allowances for the fiscal year ending in 1944 amounted to $40,518.93, of which $33,019.93 was paid in cash, and $7,500 was paid in stock. However, C. H. Stokey was paid all of his authorized salary and bonus in cash and only H. E. Stokey and W. H. Stokey received stock of the corporation in the principal amount of $7,500. There was an increase in *153 the fixed salaries of the three officers for the fiscal year ending July 31, 1945. The fixed salary of each of the officers was as follows: H. E. Stokey $9,625; C. H. Stokey $7,058.33; W. H. Stokey $5,850, or a total of $22,533.33. The increase in the fixed salaries amounted to only $1,533.33 more than that of the previous year. However, the bonus allowances of the three officers, at the rate of 15 per cent of net profits increased to $70,587.83, which amounted to $51,068.09 more than the authorized bonus allowance for the previous year. The bonus allowances which were authorized for the fiscal year ending in 1945 were as follows: H. E. Stokey $23,375; C. H. Stokey $23,541.67; W. H. Stokey $23,671.16, or a total of $70,587.83. The total of the fixed salaries and the bonus allowances for the three officers for the fiscal year ending in 1945 was $93,121.16 of which $18,522.64 (less than the total amount of authorized fixed salary) was paid in cash, and the balance, $74,598.52 was paid by demand notes of petitioner. In 1946, the notes of petitioner were paid to the extent of $39,056.14 by the issuance of stock to the three officers, and the balance - $35,542.38 - was paid in cash. *154 For the fiscal years ending in 1946 and 1947 the compensation of the three officers consisted only of annual fixed salaries, and no bonus allowances were accrued. At a special meeting of the directors of petitioner on August 1, 1945, each of the three officers offered to accept the sum of $24,000 in full payment of all bonuses due him from petitioner for the fiscal year ending July 31, 1945, and the offer of each officer was accepted by petitioner. The authorized bonus of each officer for the fiscal year ended July 31, 1945, was $23,375. Each of petitioner's officers was skilled in their trade. In 1945, W. H. Stokey was about 70 years of age, and he had been engaged in his trade all of his life. H. E. Stokey was about 45 years of age, and C. H. Stokey was about 37 years of age. During the fiscal year ending in 1945, each officer devoted about sixteen hours per day, during seven days per week to the business of petitioner. W. H. Stokey was the production manager. H. E. Stokey and C. H. Stokey handled all of the executive duties, and in particular took care of contracting, priorities, shipments, materials, planning, negotiating, and, in general, the supervision of the execution *155 of all of petitioner's business. They also worked on production problems. The three officers were men of experience and skill, and petitioner's success during the fiscal year ended July 31, 1945, was due in large measure to the constant and diligent work of the three officers. It was determined by the War Price Adjustment Board that petitioner realized excessive profits for the fiscal year ending in 1945 to the extent of $35,000. Petitioner accepted that determination. No dividends have ever been paid on the stock of petitioner because of petitioner's need for working capital. A reasonable allowance for the entire compensation of each of petitioner's officers for the fiscal year ending in 1945 is as follows: H. E. Stokey $28,500; C. H. Stokey $26,100; and W. H. Stokey $25,021.16; total $79,621.16. Opinion The total authorized compensation of each of the officers of petitioner for the fiscal year ended July 31, 1945, was as follows: H. E. Stokey $33,000; C. H. Stokey $30,600; and W. H. Stokey $29,521.16. The respondent disallowed $4,500 of each of the above amounts of authorized and accrued compensation, with the result that petitioner has been allowed deductions of $28,500; *156 $26,100; and $25,021.16 for the compensation of each of the above named officers. As part of the deductible expenses of a business, there is allowed by section 23 (a) (1) (A) of the Internal Revenue Code, "a reasonable allowance for salaries or other compensation for personal services actually rendered." The question in this proceeding is to determine the amount of the deduction to which petitioner is entitled under section 23 (a) (1) (A) for the compensation of each of its officers. The amount of the deduction depends upon determination of the amount of a reasonable allowance for compensation. The burden of proof is upon the petitioner. The respondent determined that the accrued amount of the compensation of each officer was excessive to the extent of $4,500, each. In making this determination he took into consideration the fact that all of the stock of petitioner was owned by the three officers with the exception of fourteen shares of stock; that no dividends were paid on the stock in the taxable year, the year of the highest earnings of petitioner; and that the bonus allowance of 15 per cent of net earnings for the three officers served to allocate a total *157 of 45 per cent of net earning, after allowing for the fixed amounts of the salaries, to officers' compensation. Respondent contends that the petitioner has failed to introduce evidence which overcomes the prima facie correctness of his determination. The issue presented for decision and the facts and circumstances in this proceeding, are such that it resembles closely the proceeding of Long Island Drug Co., 35 B.T.A. 328; affd; 111 Fed. (2d) 593; certiorari denied, 311 U.S. 680. The principles of law which are to be considered under the issue presented have been set forth in Long Island Drug Co., supra, to which reference is made in lieu of restating the principles, excepting to say again that the question of a reasonable allowance for compensation must be decided in each case upon the evidence adduced. In this proceeding the question is decided upon the record before us, just as in other cases, the question has been decided upon the facts of record. We have taken into consideration all of the cases which the petitioner has cited (all of them being unreported Memorandum Opinions), and recognize that the taxpayer-petitioners in *158 those cases were successful in their claims with respect to the reasonableness of the amounts of compensation for which business expense deductions were taken. The petitioner places considerable emphasis upon the point that in the cited proceedings it has been held by this Court and the United States Board of Tax Appeals, that amounts of compensation were reasonable allowances for the purpose of a business expense deduction which amounts were computed by taking a fairly high percentage of net earnings as the measure of the amount of the compensation for services. Of course, it must be realized by the petitioner that as a matter of law there is no rule that any one of several possible percentages of earnings constitutes an infallible method of determining a reasonable amount of compensation for services. Section 23 (a) (1) (A) of the Code specifies that a deduction may be taken for "a reasonable allowance" for compensation, and in each proceeding it is the amount of the compensation for which deduction is claimed which must be shown to be reasonable, not the arithmetic formula which has been used to compute the amount of compensation. Under the facts of one case, 15 per cent of net *159 earnings may yield the amount which is the reasonable allowance for compensation, but under different facts found in another case, 15 per cent of net earnings will yield more than a reasonable allowance. There is no percentage method which is the touchstone. The evidence before us does not convince us that the reasonable amount of compensation for H. E. Stokey was $33,000, for C. H. Stokey was $30,600, and for W. H. Stokey was $29,521.16. To the contrary, the evidence indicates, in our opinion, that the foregoing amounts were excessive, in part. Furthermore, we are of the opinion, upon the entire record in this proceeding that the amount, in each instance, which the respondent has determined was a reasonable allowance for compensation in the taxable year, was in fact, in each instance, the reasonable amount, and, therefore, the ultimate findings of facts as to the reasonable allowance for each officer's compensation have been made. Consideration has been given to the evidence that all of the officeremployees were highly skilled workmen and efficient managers; that they worked overtime during the taxable year; and that they were ingenious in overcoming difficulties of various kinds *160 in production. To be sure, their efforts deserve commendation, but that is outside of the area within which the issue must be decided. Upon the entire record, it cannot be concluded that the respondent's determinations were in error, and it is held that they were correct. It is our understanding that the petitioner concedes the correctness of other determinations of the respondent so that there is no necessity for a Rule 50 recomputation of the taxes. Accordingly, Decision will be entered for the respondent.